**UNITED STATES of America**

v.

**Paul ARNONE, Jr., Richard E. Whitaker, Defendants.**

**Criminal Action No. 96–00070 (SS).**

United States District Court,
District of Columbia.

March 10, 1997.

**6**

Thomas Earl Patton, III, Steven Carl Tabackman, Tighe, Patton, Tabackman & Babbin, Washington, DC, for Maria J. Coleman.

James Lawrence Lyons, Kellogg, Williams & Lyons, Washington, DC, Steven Carl Tabackman, Tighe, Patton, Tabackman & Babbin, Washington, DC, for Erling R. Gjerset.

Donald Thomas Bucklin, Squire, Sanders & Dempsey, Washington, DC, for Paul Arnone, Jr.

Julian Simon Greenspun, Stroock & Stroock & Lavan, Washington, DC, Donald Thomas Bucklin, Squire, Sanders & Dempsey, Washington, DC, A.J. Kramer, Federal Public Defender for DC, Washington, DC, for Richard E. Whitaker.

Thomas Edwin Zeno, Economic Crime Sec., U.S. Attys. Office, Washington, DC, for U.S.

## MEMORANDUM OPINION & ORDER

SPORKIN, District Judge.

This matter is before the Court on Defendants' motions to: (1) Dismiss Counts 1–20 of the [Superseding] Indictment; (2) Dismiss the superseding indictment on grounds of alleged government misconduct; and Government's Omnibus Response thereto.[1]

### FACTUAL BACKGROUND

The defendants were initially indicted with co-defendants Maria Coleman and Erling Gjerset. On September 20, 1996, the Court issued an Order denying all four defendants' motions to dismiss. Coleman and Gjerset have now entered pleas of guilty and are awaiting sentencing. The government has filed a superseding indictment against defendants Arnone and Whitaker. Defendants attack that superseding indictment in these motions.

Arnone and Whitaker are charged with wire fraud, conspiracy, engaging in monetary transactions in property derived from specified unlawful activity, and aiding and abetting. Underlying the charges is an alleged scheme by Arnone and Whitaker along with former co-defendants Coleman and Gjerset to defraud the United Food and Commercial Workers Union (UFCW) of approximately $1.75 million. It is alleged that Arnone and Whitaker created three new corporations and, in complicity with Coleman and Gjerset, arranged to unlawfully receive money from the UFCW in the form of bogus "loans." Those loans were made by Coleman, comptroller of the UFCW, without the Union's authority. Portions of the loan money were allegedly "kicked back" to Coleman and Gjerset in various forms. Some of the money was allegedly used by Arnone and Whitaker to construct a home for the personal use of Coleman and Gjerset.

### ANALYSIS & DECISION

1. *Motion to Dismiss Counts 1–20 of the Superseding Indictment*

█ Defendants move to dismiss Counts 1–20 of the Superseding Indictment, which

---

1. The Government's response also addressed Defendants' motion for authorization to subpoena NationsBank records. With the consent of all parties, the Court granted that motion during the hearing on this matter and signed the appropriate order.

charge wire fraud, on grounds that the indictment does not allege sufficient facts to support a charge of wire fraud. Specifically, defendants claim that there can be no charge of fraud because there is no allegation that they violated any duty of disclosure, or made any affirmative misrepresentation, to UFCW. The Government's position is that the defendants' interpretation of the term "fraud" limiting it to the concept of "deception" is too narrow.

As the Supreme Court has stated, " 'to defraud' commonly refer[s] 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching.' " *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (*quoting Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)) (internal citation omitted). A person may commit a fraud upon a person or entity without making an actual misrepresentation to that party or without breaching a specific duty to that party. The allegations here include that (1) the defendants created shell corporations to receive funds, specifically forming multiple corporations in order to avoid suspicion by Union officials if a number of large loans were made to a single entity; (2) the defendants kicked-back payments to Coleman, the one and only officer of the Union who knew about and authorized the "loans"; (3) the former co-defendant Coleman falsely introduced defendant Arnone to the president of the Union as someone working in the health care retirement business rather than the building business; (4) the defendants made token repayments on the "loans" to delay the Union from discovering the fraud.

As the Court stated in its September 20, 1996 opinion, "[t]he government need not reveal to the defendants the precise manner in which it intends to prove its case." *United States v. Coleman*, 940 F.Supp. 15, 19 (D.D.C.1996). The allegations in the indictment are more than sufficient to support the

wire fraud counts.[2]. Therefore, defendants' motion to dismiss Counts 1–20 is denied.

2. *Motion to Dismiss on grounds of alleged government misconduct*

Defendants also move to dismiss the indictment because they allege the government has engaged in misconduct. Specifically, they allege the government improperly used its power over the co-defendants Coleman and Gjerset to force them to make "insulating" statements that could be used for impeachment purposes at trial. The basis of the allegation is that the government did not seek such statements as conditions of Coleman's and Gjerset's pleas until it learned that the remaining defendants wished to call them as witnesses at trial. The Court rejects this contention. The government was clearly within its authority to seek a full briefing from Coleman and Gjerset as a condition of their pleas. This is a common and proper practice. Of course, if Coleman and Gjerset testify in a manner that is consistent with the information they provided to the government, there will be nothing for the government to impeach.

Defendants further allege that the government abused its power by improperly using the grand jury to bring Gjerset's parents before it after Gjerset and Coleman plead. The record shows that the grand jury testimony of Gjerset's parents was elicited while the government was seeking the superseding indictment against the defendants in this case. There is no evidence that the government abused its power in seeking the Gjersets' testimony. The grand jury had a proper purpose, and indeed a superseding indictment did result from its work.

The defendants have made no showing of misconduct on the part of the government. Accordingly, the defendants motion to dismiss the indictment on grounds of government misconduct is denied.

---

2. Defendants make much of the fact that the Government alleges in the indictment that it was part of the scheme not to inform the Union of the

fraud. A wrongdoer does not avoid responsibility by simply telling a defrauded party "you're being defrauded."